We're going to move now to our final case of the morning. This is Appeal No. 20-1667, Jeffrey Foster v. PNC Bank. We'll begin with argument from the appellant, Mr. Stein. Good morning, Your Honors, and may it please the Court. I am Max Stein, and along with my colleague Lauren Dreyfus, we represent Plaintiff Appellant Jeff Foster. As the briefs make clear, this appeal focuses on the evidence presented in connection with the motion for summary judgment filed by defendant appellee PNC Bank. That evidence came from three affidavits and the exhibits attached to them. Those affidavits consist of one from Mr. Foster, based on his having lived through the events he recounts, and two from PNC's corporate representatives, based on their review of PNC's files. In considering the evidence and granting PNC's motion, the District Court rejected Mr. Foster's affidavit in its entirety, holding that it was conclusory and based on hearsay. At the same time, the District Court favored the evidence from PNC, even when it was without any stated basis in PNC's files, and therefore without any basis whatsoever, since neither of PNC's witnesses had any personal knowledge of the events they related. Tellingly, the District Court frequently refers to evidence from PNC's, quote, sworn affidavit, or, quote, sworn statement, while never once using that language to refer to Mr. Foster's affidavit, even though all three affidavits were provided under oath. As explained in our briefs, the District Court erred in rejecting the Foster affidavit. There is nothing conclusory about Mr. Foster's affidavit. Are you seeking, Mr. Stein, a more nuanced view that, and this has got 200 paragraphs, 70 exhibits, you're saying some statements may have been conclusory, but the entire affidavit should not have been ignored? I would suggest that, at a minimum, that is the case, yes, Your Honor. Mr. Foster's affidavit relates the facts as he experienced them, often supported by documents from PNC's files. PNC's affidavits relate only what its files show and frequently fail to address the documents that Mr. Foster references from PNC's own files. But the standard, of course, is not what Mr. Foster believed. It's Federal Rule of Civil Procedure 56C4 and whether or not that's appropriately followed. Well, and to be clear, Your Honor, I did not say what Mr. Foster believes. I said what Mr. Foster experienced. So he experiences something. He is the only person who, in the record, who experienced that event. Let's use the Illinois refinance in 2006. Let me just pause for a moment to say the point is made that the Illinois loan is not yet on appeal, and that is true. But the events related to the Illinois loan are part of what the district court said are evidence of Mr. Foster's conclusory statements regarding in the affidavit. And they're part of what the district court said justified ignoring the affidavit in its entirety. And so I think it's appropriate to look at those events when considering the district court's judgment on Mr. Foster's affidavit. Mr. Foster's testimony about the Illinois loan is that he did not sign the documents that PNC says he signed. The district court and PNC say Mr. Foster saying I did not sign that document is conclusory. That is not conclusory. That is Mr. Foster, based on his personal experience, saying I didn't do the thing that you said I did. Now, PNC says yes, you did. We have documents. That's fine. That is a genuine issue of material fact, and that prevents summary judgment and necessitates a trial. Now, what genuine issues of material fact do you believe Mr. Foster has identified here? So there are numerous genuine issues of material fact here. I'm going to continue to focus for a moment on the Illinois loan. PNC says we have a loan document dated May 30, 2016 that bears your signature. Mr. Foster says I didn't sign that document on that date. And he says what happened on that date was I went to your branch for a closing. Some documents were presented to me. I started to look at them. I started to sign some of them, but not the ones that you're pointing to. And then I noticed in the ones that you're pointing to some mistakes. There's no loan number, the interest rate is wrong, and there's a basement still in the terms. I did not sign because of those problems and because you, PNC, were unable to get the appropriate personnel there to complete the closing. It's not disputed when Mr. Foster says you weren't able to get the appropriate personnel there. There's nothing from PNC disputing that. Because we're dealing here with the Florida loan, perhaps same question I posed earlier, but with regard to the Florida loan. Sure, although I just want to add one more thing on the Illinois loan. I'll be a bit aggressive. What happened after that is PNC rescheduled the loan closing twice more and prepared loan documents for those closings on June 5th and June 6th. When asked why those documents exist, if the loan actually closed on May 30th, 2006, PNC's own witness said he had no explanation. On the Florida loan, there is information that shows that PNC failed to pay the right amount for flood insurance. PNC was paying this out of the escrow account, and it failed to pay the right amount. Mr. Foster, the evidence shows in his affidavit, talked to PNC about this problem, identified the problem, tried to get PNC to resolve the problem, and then had to resolve it himself. Does he believe, does Mr. Foster believe there's a genuine issue of material fact as to whether or not PNC could force place the insurance? No. Mr. Foster doesn't believe that they had, does not contest that they had the right to do it. He contests that the circumstances here justified its actions. And what I mean by that is Mr. Foster had fixed the problem, the problem that PNC created, and then he told PNC he had fixed that problem. That also is uncontested in the record if Mr. Foster's affidavit is considered. PNC simply says, we have no written record of you telling us this. There's no indication in the record that there's a requirement for Mr. Foster to tell PNC in writing. And there is nothing disputing Mr. Foster's testimony that he called PNC and told them that he had resolved the issue. Under these circumstances, our position is that Mr. Foster and PNC, having been through a lot, have a lot of factual issues that need to be resolved at trial. And the district court erred when it granted summary, when it rejected Mr. Foster's affidavit and granted summary judgment. In a case like this, this court has noted where two parties present two vastly different stories, it is almost certain that there are genuine issues of material fact. We suggest that's the case here, and we ask this court to remand the case for a trial. You'd like to reserve the remainder of your time? Yes, please. Yes. Thank you very much, Mr. Stein. We'll now hear from the appellee, Mr. Duhamel. Good morning. May it please the court. My name is Marcel Duhamel. I represent PNC. The district court got it right. This court should affirm. I want to briefly mention this Illinois loan issue. Although the Illinois loan has absolutely nothing to do with this appeal, but it is illustrative of what's going on here. The district court did not ignore Mr. Foster's affidavit testimony with respect to the Illinois loan. What the district court did was apply Illinois substantive law to that testimony and conclude that where the law in Illinois says that to overcome the presumption that a notarized signature is authentic, the nonmoving party must come forward with evidence, A, that is clear and convincing, and B, from a disinterested witness, which Mr. Foster, of course, is not. This type of issue is what's going on with this entire case. This affidavit does not create an issue of fact, and the district court did not ignore it. What the district court did was, throughout the opinion, cite to portions of the affidavit that it was discussing. The fact that it chose not to cite every one of the 200-some-odd paragraphs in the affidavit, of course, is immaterial. So any determinations your position is, PNC's position is, any determinations by the district court that a certain paragraph or sentence in a paragraph was hearsay or conclusory, you agree with those determinations, you don't disagree with them? Sure, we agree with those. The district court was right on the hearsay question, for instance, whether or not Mr. Foster was told by some loan officers at some banks that he wouldn't get credit if he applied. That testimony was offered in support of his claim that he suffered damages under the FCRA or damages tied to destruction of credit. But courts around the country have held that you can't get damages under the FCRA for denial of credit unless you actually applied for credit. If you don't apply for credit, you can't show that you were denied credit. And Mr. Foster's affidavit admits he never applied for credit. The sincerity of his belief, however sincere it is, that he may have been denied credit had he applied for it, is no evidence at all, A, that he would have been, but more importantly, that he was. On the flood insurance issue, again, this is about characterization of record evidence. And characterizations of record evidence cannot create an issue of fact. There is nothing in the record, nothing, that suggests PNC did anything wrong with respect to the flood insurance. To the contrary, Mr. Foster's own affidavit attached a document he received from FEMA in which FEMA pointed out that if the insurance coverage on the flood insurance went from $180,500 to $250,000, as PNC was now requiring, that would cause an increase in the premium. That makes sense. You can't get $70,000 more coverage without an increased premium. And because that premium hadn't been paid, someone had to pay it. And when PNC asked Mr. Foster for proof that he had paid it, Mr. Foster didn't provide that proof. So PNC obtained lender-placed flood insurance. When Mr. Foster eventually provided that proof in July of 2011, PNC refunded every penny of that flood insurance gap lender place that it had gotten, every penny of it. Mr. Foster then complains, well, but that still caused my payments to go up. Well, of course it did. The reason, though, had nothing to do with the forced place of the gap insurance and everything to do with the fact that his flood coverage had gone from $180,500 to $250,000. So in May of 2011, when PNC ran an escrow analysis, and again, this is in the record, Dorothy Thomas' affidavit, it concluded, based on its projections, that it would need more money from Mr. Foster every month in order to pay that insurance premium. That's it. There's nothing improper about that. And the district court correctly concluded that Mr. Foster's affidavit didn't create an issue of fact about that. Mr. Foster today spent a fair bit of time attacking affidavits of Dorothy – well, the affidavit of Dorothy Thomas, PNC's witness on the Florida loan. There was no objection to PNC's affidavit below, none. The first time we hear any complaint about whether it was appropriate to rely on PNC's affidavit, Dorothy Thomas' affidavit, is in this court, not below. And in any event, PNC's affidavit is based on the business records exception to the hearsay rule. We established that that exception applied, and it was perfectly appropriate for the court to rely on that affidavit. Can we go back to the Fair Credit Reporting Act claim? Absolutely. The district court ruled that Mr. Foster would not be able to show damages. Do you believe Mr. Foster had standing with regard to the FCRA? No, probably not, although we did not brief standing below. But no, probably he did not. And the reason is because, again, he didn't have damages. In order to sue a furnisher, and that's the claim here, you have to show that the furnisher failed to conduct a reasonable investigation when it received a report or a complaint from a CRA, a consumer reporting agency. And you have to show that you were damaged by that failure to conduct a reasonable investigation. Damage under the FCRA means denial of credit, and more than that. Denial of credit is the necessary predicate. Then you have to show that the denial of credit actually hurt you. In the absence of that, I don't think he has standing. So no, I don't think there was standing under the FCRA. Briefly, I'd also like to talk about the issue related to wind insurance. Because here, too, the briefs accused the district court of having ignored Mr. Foster's testimony with respect to wind insurance. And that, again, is not what happened. What the district court quite correctly did was hold that whether or not wind insurance was required under the contract could be resolved by looking to the language of the unambiguous contract. And it held that under Section 5 of the mortgage, PNC unambiguously was entitled to require wind insurance. Because courts don't look to extrinsic evidence to interpret an unambiguous contract, there was nothing in Mr. Foster's affidavit that he could have said that would have borne on that question. That's not because the district court chose to disregard or disbelieve Mr. Foster. It is because the law applied to that testimony meant that testimony wasn't relevant. The closest Mr. Foster ever came was trying to argue that there was some sort of subsequent modification of the contract through the party's course of dealing. Mr. Foster's affidavit on that topic wasn't entirely irrelevant, but it was missing a key element. Under Florida law, to modify a contract, you must show consideration exchanged specifically for the modification. And Mr. Foster's affidavit doesn't make any attempt to do that. So the district court, again, didn't simply ignore or disbelieve Mr. Foster's credit. I'm sorry, affidavit. It asked the question, what are the elements of these causes of action? What are the elements of the defense? And are there specific facts alleged in the affidavit that actually create a genuine issue of material fact in light of those specific elements? Mr. Foster's brief accuses the district court and us of, quote, parsing the evidence and trying to tie the evidence too closely to the causes of action. But that's what a court is supposed to do when it's resolving a motion for summary judgment. Courts are not supposed to say, well, gee, it's a really long affidavit, and these parties have been through an awful lot, so let's have the jury decide it. That's not a ruling on summary judgment. What this district court did was carefully apply the law to the facts as they appeared in the record and concluded that PNC was entitled to judgment in its favor as a matter of law. The district court was right, and this court should affirm. Thank you, Mr. Duhamel. We're going to move back now to Mr. Stein for rebuttal. Thank you, Your Honors. I want to start with Mr. Duhamel's statement that PNC did nothing wrong with regard to the flood insurance. That's not right. The record reflects in Mr. Foster's unrebutted affidavit that the payment for the flood insurance premium was made by PNC out of the escrow. It underpaid that premium by $82. That $82 was why the insurance was listed at less than the required amount. Mr. Foster called PNC, spoke to a representative named Ari about this problem, and tried to resolve it with Ari. When he failed to be able to do that, Mr. Foster paid the $82 himself. So Mr. Duhamel's statement that there was nothing that PNC did wrong ignores the beginning of the problem. And then steps back and says, well, once the problem was created, PNC didn't do anything wrong in addressing the problem. Only, it didn't do anything in addressing the problem. Mr. Duhamel also said that by July, Mr. Foster had provided the requested, not required, requested written proof of insurance. There's nothing in the record that shows that that proof of insurance actually came from Mr. Foster or actually came in writing. Instead, in Ms. Thomas' affidavit at paragraph 43, Ms. Thomas simply says that PNC had received notice that he had sufficient insurance. That is an important distinction, and PNC and the district court don't pay close enough attention to these details that demonstrate the existence of genuine issues of material fact. Similarly, on the wind insurance point, Mr. Duhamel says that the district court correctly concluded that section 5 of the mortgage allowed for PNC to require wind insurance. It is true that section allows for additional insurance, and wind insurance could be one kind of additional insurance. Nowhere in that paragraph, though, does it say wind insurance is required. Also, the record makes clear that in 2004 through 2010, Mr. Foster did not have wind insurance, and that is relevant not to say that they couldn't require it, but to say that Ms. Thomas' statement at paragraph 17 of her affidavit that wind insurance was required in 2004 is wrong, and it's wrong also because it's based on nothing in the record. Can you address before you go the Fair Credit Reporting Act claim and why it's your position that Mr. Foster has standing? Yes, because Mr. Foster explains the reasons why he did not make the application, the futile application, for additional credit. Mr. Foster has satisfied the requirements of showing that he would not have gotten the credit even if he had applied. Mr. Foster is a sophisticated real estate investor who had relationships with numerous lenders. Based on those relationships, he knew what those lenders were willing to lend him, and he knew that once PNC began negative reporting on his credit, which the record reflects is the only negative reporting on his credit, he knew from conversations with those lenders, lenders who are identified by company, that they would not be able to make him the loans that he had been wanting to receive from them and had previously been able to receive from them. So this instance is not like somebody who has negative reporting and simply sits back and does nothing and then files a lawsuit. This is a different type of evidence that is presented to show that the credit was not available as a result of the negative reporting by the very furnisher who is the defendant. Thank you, Mr. Stein. Thank you, Mr. Duamo. The case will be taken under advisement. That will complete our hearings for the day. Judge Mannion will call you in about 10 minutes.